## Case No. 14,732.

### UNITED STATES v. CARR.

[1 Woods, 480.] [1]

Circuit Court, S. D. Georgia. Nov. Term, 1872.

HOMICIDE—ARMY—KILLING BY MEMBER OF GUARD —MILITARY ORDERS — SUPPRESSING DISORDER — USE OF FORCE — DEADLY WEAPON.

1. The willful killing of a soldier by the sergeant of the guard, while on duty, is not necessarily a justifiable homicide.

2. The order of a superior military officer to an inferior will not, of itself, justify the willful killing of another.

3. A soldier is bound to obey only the lawful orders of his superior officers.

4. In the suppression of a disorder or mutiny among soldiers, the means used should be proportioned to the end to be gained. Violent meas-

---

1 [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

ures, clearly unnecessary, will not be justified. But officers, charged with the good order of a camp or fort, will not be required to weigh with scrupulous precision the exact amount of force necessary to suppress disorder.

[Cited in U. S. v. Clark, 31 Fed. 716.]

5. No mere words, applied by one man to another, will justify the use of a deadly weapon; nor can they be the lawful occasion of that "heat" which would reduce the act of killing from murder to manslaughter.

[6. Cited in U. S. v. Meagher, 37 Fed. 878, to the point that in all criminal cases the defendant may be found guilty of any offense, the commission of which is necessarily included in that with which he is charged in the indictment.]

Robert E. Carr was indicted and tried, at the November term, 1872, of the circuit court for the Southern district of Georgia, for the willful murder of Harmon A. Jordan. The case was this: Both the prisoner and the deceased were soldiers in the 3d artillery, United States army, and were stationed at Fort Pulaski, on Cockspur Island, near the mouth of the Savannah river, in Georgia. On the 13th of July, 1872, the prisoner was the sergeant of the guard at the fort. About seven o'clock in the evening, a drunken quarrel occurred between some of the soldiers in the fort. Sergeant Bell, attempting to suppress the disorder, was taking Corporal McKinley to the guard house, when he was set upon by other soldiers and knocked down and left insensible upon the ground. A call was then made for the sergeant of the guard. The prisoner and three men of the guard at once crossed the parade to the scene of the disorder. The prisoner gave Sergeant Shirer, who was one of the disorderly soldiers, in charge of two men of the guard to convey him to the guard house. Shirer had lost his cap, and, when he asked leave to get it, the prisoner struck him with the butt of his musket and knocked him down. At this point, the deceased approached the prisoner and said to him, "You are a mean man," or "You are a damned mean man to knock a man down in that way." The prisoner then made an attempt to run his bayonet into deceased, who avoided the thrust, and turned and commenced running toward his quarters. Prisoner raised his piece to fire. It was at half-cock. He brought it down, cocked it, raised it again, and fired at deceased, who was at the time running from prisoner toward his quarters. The ball entered the back of deceased near the spine, passed through his body, coming out near the left nipple; passed through his left elbow and then struck the wall of the fort beyond. At the time he was shot, the deceased was eight or ten yards from prisoner. He died in about ten minutes. It was a disputed question of fact, upon the trial, whether the deceased was engaged in, or was trying to suppress, the disorder among the soldiers at the time the prisoner came up. There was also some evidence tending to show that the musket of the prisoner was discharged accidentally and not purposely, and that prisoner acted under the orders of the ranking

sergeant in the fort. There was no commissioned officer within the fort at the time of the homicide.

George S. Thomas. Asst. U. S. Atty.

Julian Hartridge and M. J. O'Donohue, for defense.

WOODS, Circuit Judge (charging jury). The prisoner stands at the bar of this court charged with the crime of willful murder. The indictment is based upon the third section of the act of congress, approved April 30, 1790 (1 Stat. 113), which reads as follows: "That if any person or persons shall, within any fort, arsenal, dockyard, magazine, or in any other place or district of country under the sole and exclusive jurisdiction of the United States, commit the crime of willful murder, such person or persons on conviction thereof shall suffer death." It charges that the prisoner, on the 13th of July, 1872, at and within Fort Pulaski, on Cockspur Island, within the Southern district of Georgia, the said fort being at that time under the sole and exclusive jurisdiction of the United States, did, upon the person of one Harmon E. Jordan, commit the crime of willful murder by shooting him with a musket. To this indictment the prisoner has pleaded not guilty, and has put himself upon the country. He comes to the bar under the protection of that humane maxim of the law, that every man is presumed to be innocent until the contrary is shown. In other words, the burden of proof is on the United States to establish the prisoner's guilt. Until this is done, in the eye of the law he is innocent. The prosecution must prove to your satisfaction every material ingredient of the offense of willful murder, before you would be justified in returning a verdict of guilty.

Counsel for prisoner do not deny that on the 13th of July last at Fort Pulaski, within the Southern district of Georgia, Harmon E. Jordan was killed by a shot fired from a musket held in the hands of the prisoner. Nor do they deny that the United States has sole and exclusive jurisdiction over Cockspur Island, on which Fort Pulaski is situate. There is therefore no question raised as to the jurisdiction of this court to try the accused.

It is not every killing of a human being that is criminal. Many homicides are of such a nature as to be no crimes at all. This makes it necessary for the court to instruct you what constitutes the crime of willful murder as known to the law. Murder is defined to be "when a person of sound memory and discretion unlawfully killeth any reasonable creature in being and under the king's peace, with malice aforethought, express or implied." 3 Co. Inst. 47. In the case on trial it is not denied that the deceased, Harmon E. Jordan, was killed by a musket ball fired from a musket held in the hands of the prisoner, nor is it denied that the prisoner was of sound memory and discretion at that time, nor that Jordan was under the peace and protection of the

law, so that the willful killing of him would be a crime. Therefore, according to the definition just quoted, the only points for you to pass upon in deciding whether the prisoner at the bar is guilty of murder are: First, was the killing unlawful? and second, was it done with malice aforethought, express or implied?

Upon the point whether or not the killing was unlawful, you will first inquire whether the act of the prisoner which resulted in the death of Jordan was intentional or unintentional. If it was unintentional, if the prisoner had no purpose to fire his piece, but it was discharged by him accidentally, and at the time of its discharge the prisoner was engaged in no unlawful act, then the act of killing is a homicide by misadventure, and is no crime. Therefore, if you shall be of opinion that the musket of the prisoner was accidentally discharged, and he was at the time engaged in no unlawful act, it would be your duty without further inquiry to return a verdict of not guilty. If, however, on the other hand, you believe the prisoner discharged his piece purposely, you will then inquire further whether the killing was lawful or unlawful. The simple fact, if such you find to be the fact, that the prisoner, on the 13th of July last, was sergeant of the guard at Fort Pulaski, and the deceased was at the same time and place a private soldier, does not of itself make the killing a lawful homicide. The willful killing of a soldier by a guard may be as clearly murder as the willful killing of one citizen by another. Nor will any order of a superior officer to an inferior in rank justify the willful killing of a person under the peace and protection of the law. A soldier is bound to obey only the lawful orders of his superiors. If he receives an order to do an unlawful act, he is bound neither by his duty nor his oath to do it. So far from such an order being a justification, it makes the party giving the order an accomplice in the crime. For instance, an order from an officer to a soldier to shoot another for disrespectful words merely would. if obeyed, be murder, both in the officer and soldier. It was the duty of the prisoner as officer of the guard to preserve the peace within the fort, and to suppress disorderly and mutinous conduct. He was authorized to use all proper and reasonable means to accomplish this end. But the means used and the force applied should be measured by the necessity of the case. For instance, the law would not justify the killing of a single unarmed soldier, even though drunken, riotous or even mutinous, when he could be arrested without resort to such extreme means. The means used must be proportioned to the end to be accomplished. In order to determine whether the homicide, now under investigation, was lawful or unlawful, you should consider what, under the circumstances of the case, would appear to a reasonable man to be the demands of duty. Place yourselves in the position of the prisoner at the time of the homicide. Inquire whether at the moment he fired his piece at the deceased, with his surroundings at that time, he had reasonable ground to believe, and did believe, that the killing or serious wounding of the deceased was necessary to the suppression of a mutiny then and there existing, or of a disorder which threatened speedily to ripen into mutiny. If he had reasonable ground so to believe, and did so believe, then the killing was not unlawful. But if on the other hand, the mutinous conduct of the soldiers, if there was any such, had ceased, and it so appeared to the prisoner, or if he could reasonably have suppressed the disorder without the resort to such violent means as the taking of the life of the deceased, and it would so have appeared to a reasonable man under like circumstances, then the killing was unlawful. But it must be understood that the law will not require an officer charged with the order and discipline of a camp or fort to weigh with scrupulous nicety the amount of force necessary to suppress disorder. The exercise of a reasonable discretion is all that is required.

If you shall reach the conclusion under these instructions that the homicide under consideration was lawful, it will be your duty without further inquiry to return a verdict of not guilty. If however you shall be of opinion that the killing was unlawful, you will then proceed to inquire whether it was attended with malice aforethought, express or implied. "Malice aforethought is the grand criterion. which distinguishes murder from other homicide, and it is not so properly spite or malevolence to the deceased in particular, as any evil design in general; the dictate of a wicked, depraved and malignant heart; a purpose to do a wicked act. and it may be either express or implied in law. Express malice is when one with a sedate, deliberate mind and formed design doth kill another, which formed design is evidenced by external circumstances discovering that inward intention, as lying in wait, antecedent menaces or former grudges, and concerted schemes to do him some bodily harm. So in many cases, when no malice is expressed. the law will imply it, as when a man willfully poisons another; in such a deliberate act the law presumes malice. though no particular enmity can be proved. And if a man kills another suddenly, without any. or without a considerable provocation, the law implies malice; for no person, except of abandoned heart, would be guilty of such an act upon a slight or upon no apparent cause." 4 Bl. Comm. 198. "Although the malice in murder is what is called 'malice aforethought,' yet there is no particular period of time during which it is necessary it should have existed, or the prisoner should have contemplated the homicide. If, for example, the intent to kill or do other great bodily harm is executed the instant it springs into the mind, the offense is as truly murder as if it had dwelt there for a long period." 2 Bish. Cr. Law, § 677.

If you are satisfied that the prisoner at the

bar when he fired upon the deceased intended not to kill him. but only to do him some great bodily harm. if his act was unlawful and was done with malice aforethought, as it has been explained to you, still he is guilty of murder. A recent act of congress declares that in all criminal causes the defendant may be found guilty of any offense, the commission of which is necessarily included in that with which he is charged in the indictment. Section 9, Act June 1, 1871 (17 Stat. 198). We instruct you that the crime of manslaughter is included in the crime of willful murder, with which the prisoner is charged in the indictment. So that if after a careful investigation, you should conclude that the prisoner is not guilty of willful- murder, you may still find him guilty of manslaughter. "Manslaughter is defined to be the unlawful killing of another without malice, express or implied, which may be either voluntarily upon a sudden heat, or involuntarily, but in the commission of some unlawful act." 4 Bl. Comm. 191. • If you shall be of opinion that the killing of the deceased was unlawful, you must decide whether the offense of the prisoner is murder or manslaughter.

It is not claimed in this case that the firing of the prisoner's musket was done involuntarily while the prisoner was in the commission of an unlawful act. So that if the prisoner is guilty of manslaughter at all, it must be because he is guilty of a killing voluntarily upon a sudden heat. No words applied by one man to another will justify the use of a deadly weapon, nor can they be the lawful occasion of that "heat" which would reduce the act of killing from murder to manslaughter. If a man returns provoking language by a blow from an instrument calculated to produce death, and death follows, the act will be murder. · State v. Merrill, 2 Dev. 269; 1 Bish. Cr. Law, §§ 872, 873. If you find the killing of the deceased was unlawful, but without malice, as we have defined malice, if it was done upon a sudden heat, not caused by the words merely of the deceased, but by an assault, then the prisoner is guilty of manslaughter and not of murder, and such should be your verdict. Before you can find the prisoner guilty of either murder or manslaughter, you must be satisfied beyond reasonable doubt, that every ingredient necessary to the offense has been established by the proof. A reasonable doubt is not a remote and far fetched or fanciful doubt. It must be suggested by the evidence in the case, and of such strength as would influence a reasonable man in the conduct of his own affairs.

If you are satisfied beyond any reasonable doubt of the guilt of the prisoner of either murder or manslaughter. you will return a verdict of guilty accordingly. If on the other hand you are convinced of the prisoner's innocence, or have reasonable doubt of his guilt, it will be your pleasant duty to say, "Not guilty." In your retirement, remember the great magnitude of this case to the public and the prisoner; bring your best ability to bear upon the investigation, and acquit yourselves of your solemn duty like good and lawful men.