## UNITED STATES v. LEWIS.

(Circuit Court, W.·D. Texas, San Antonio Division. November 9, 1901.)

### No. 338.

1. CRIMINAL LAW—JURISDICTION OF OFFENSE—UNITED STATES COURTS.

Whether a homicide committed within the boundaries of a state constitutes an offense against the laws of the United States, of which a federal court has jurisdiction, depends on two questions: First, whether there has been such a cession by the state to the United States of the territory upon which the act alleged to constitute the crime was committed as to render such territory a "place or district of country under the exclusive jurisdiction of the United States," within Rev. St. § 5339, which is a question of law for the court; and, second, if such cession was made, whether the act was committed within the territory so ceded, which is a question of fact, to be submitted to the jury.

2. HOMICIDE—UNDER LAWS OF UNITED STATES.

The elements of felonious homicide under the laws of the United States are to be determined by the rules of the common law.

3. SAME—ELEMENTS OF HOMICIDE DEFINED.

The elements of the crime of murder, under the laws of the United States, and of the included crime of manslaughter, and the facts which must appear to render the homicide justifiable on the ground of self-defense, defined and explained in a charge to the jury.

Indictment against Reuben Lewis for murder, charged to have been committed at Ft. Sam Houston, Tex.,—a place under the exclusive jurisdiction of the United States.

Henry Terrell, U. S. Atty.
C. L. Bates, for defendant.

MAXEY, District Judge (charging jury). The indictment preferred against Reuben Lewis, the defendant in this case, is for the murder of Samuel Brown. An important question affecting the jurisdiction of the court has arisen, the disposition of which must, under the facts in evidence, be remitted to your determination. It is alleged in the indictment that the offense was committed in the county of Bexar, within the Western district of Texas, at and within the limits of the United States military station of Ft. Sam Houston, in the city of San Antonio; and it is further alleged that the site of said military station of Ft. Sam Houston had been prior to the year 1900 ceded to the United States by the governor of the state of Texas, and, further, that said military post of Ft. Sam Houston was prior to February 7, 1900, and still is, within the exclusive jurisdiction of the United States. This court could not entertain jurisdiction of the offense charged against the defendant unless it be made to appear that the homicide was committed "within any fort, arsenal, dock yard, magazine or any other place or district of country under the exclusive jurisdiction of the United States." Rev. St. U. S. § 5339. Ordinarily offenses of this character are tried and determined by the courts of the respective states, and it is only when they are committed (following the words of the statute) in some "place or district of country under the exclusive jurisdiction of the United States" that the jurisdiction of the federal courts attaches.

It is insisted by counsel for the government that jurisdiction is complete in this case for the reason that the chief executive of the state of Texas, acting pursuant to a general law of the state, has, by public proclamation, ceded to the United States exclusive jurisdiction over the site or territory occupied by the military station or post of Ft. Sam Houston. A copy of that proclamation, duly authenticated by the secretary of state, has been admitted in evidence. You are charged, as a matter of law, that the instrument executed by the governor of the state of Texas which is in evidence before you cedes to the United States exclusive jurisdiction over the lands therein particularly described. But in thus holding I do not mean to say to you that the offense charged against the defendant, if offense it be, was committed within the limits of the boundaries set forth in the instrument. That is a question of fact for you to determine from a consideration of the evidence, and, if you find that the homicide was not committed within the boundaries covered by or included within the cession, then it would be your duty to acquit the defendant. It devolves upon the government to prove to your satisfaction that the killing was done at a place within the exclusive jurisdiction of the United States, and in this case the burden is upon the government to show that the homicide was committed within the boundaries described in the cession made by the governor. See U. S. v. Cornell, 2 Mason, 65, Fed. Cas. No. 14,867; Railroad Co. v. Lowe, 114 U. S. 533, 5 Sup. Ct. 995, 29 L. Ed. 264; Benson v. U. S., 146 U. S. 325, 13 Sup. Ct. 60, 36 L. Ed. 991; In re Ladd (C. C.) 74 Fed. 31; U. S. v. Meagher (C. C.) 37 Fed. 875.

If you are satisfied that the said Samuel Brown was killed by the defendant at or within a place under the exclusive jurisdiction of the United States, it will next be your duty to inquire into the circumstances of the homicide, in order to determine the question of the guilt or innocence of the defendant. The specific offense charged against the defendant is murder. But the crime of manslaughter is included in that of murder; and if, after a careful investigation, you should conclude that the defendant is not guilty of murder, you may still find him guilty of manslaughter, if such finding be warranted by the evidence and the law as given in charge by the court (Rev. St. § 1035; U. S. v. Carr, 1 Woods, 480, Fed. Cas. No. 14,732; Stevenson v. U. S., 162 U. S. 313; 16 Sup. Ct. 839, 40 L. Ed. 980; Wallace v. U. S., 162 U. S. 466, 16 Sup. Ct. 859, 40 L. Ed. 1039), or you may find him not guilty of any offense.

Your attention will first be directed to the offense specifically charged against the defendant, to wit, murder. There are only two kinds of felonious homicide known to the laws of the United States,—one is murder and the other is manslaughter. Under the statutes of the United States there are no degrees of murder, nor do such statutes contain a definition of murder. To define it, resort must be had to the common law. By that law, "murder is where a person of sound memory and discretion unlawfully and feloniously kills any human being, in the peace of the sovereign, with malice prepense or aforethought, express or implied." Malice, you observe, is a necessary ingredient in the crime of murder, and its presence or absence marks the boundary which distinguishes the two offenses of murder and manslaughter. It is necessary, therefore, that you should understand its meaning. Malice, when attempted to be defined, has been necessarily given a more comprehensive meaning than enmity or ill will or revenge, and has been extended so as to include all those states of the mind under which the killing of a person takes place without any cause which will in law justify, excuse, or extenuate the homicide. McCoy v. State, 25 Tex. 39, 78 Am. Dec. 520. Malice, as applied to the offense of murder, need not denote spite or malevolence, hatred or ill will, to the person killed; nor that the slayer killed his victim in cold blood, as with a settled design and premeditation. Such a killing would, it is true, be murder; but malice, as essential to the crime of murder, has a more extended meaning. "A killing flowing from an evil design in general may be of malice, and constitute murder; as a killing resulting from the dictates of a wicked, depraved, and malignant spirit—a heart regardless of social duty and fatally bent upon mischief—may be of malice, necessarily implied by law from the fact of the killing without lawful excuse, and sufficient to constitute the crime of murder, although the person killing may have had no spite or ill will towards the deceased. Malice, as thus described, is either express or implied. Express malice is where one with a sedate and deliberate mind and formed design doth kill another, which formed design is evidenced by external circumstances, discovering that inward intention; as by lying in wait, antecedent menaces, former grudges, and concerted schemes to do

bodily harm." Jordan v. State, 10 Tex. 492; 3 Russ. Crimes (6th Ed.) 1, 2. It rarely, if ever, occurs that express malice is proved upon the trial of a case. The existence or nonexistence of malice is a matter to be determined by the jury from a consideration of all the facts in evidence. "The proof of homicide, as necessarily involving malice, must show the facts under which the killing was effected, and from the whole facts and circumstances surrounding the killing the jury infers malice or its absence. Malice, in connection with the crime of killing, is but another name for a certain condition of a man's heart or mind, and, as no one can look into the heart or mind of another, the only way to decide upon its condition at the time of the killing is to infer it from the surrounding facts, and that inference is one of fact for the jury." Stevenson v. U. S., 162 U. S. 320, 16 Sup. Ct. 842, 40 L. Ed. 983; Wallace v. U. S., 162 U. S. 476, 16 Sup. Ct. 863, 40 L. Ed. 1043. "Malice is to be inferred from all the facts in the case. If malice is found, it must be drawn as an inference from everything that is proved, taken together and considered as a whole. Every fact, no matter how small, every circumstance, no matter how trivial, which bears upon the question of malice, must be considered by the jury at the same time that they consider the use of the deadly weapon; and it is only as a conclusion from all those facts and circumstances that malice, if inferred at all, is to be inferred." U. S. v. King (C. C.) 34 Fed. 312. The malice which distinguishes the crime of murder must be aforethought. It implies premeditation,—a prior intent to do the act. It may have existed but for a moment,—an inappreciably brief period of time,—or longer. No limit has been, nor can be, fixed as to its duration. If it in fact existed for any period, however brief, the killing would be murder; but, if malice was wanting, the homicide could not be of a higher grade of offense than manslaughter. If, then, upon a consideration of all the facts and circumstances in evidence, you are satisfied beyond a reasonable doubt that the defendant killed Samuel Brown with malice aforethought, as above defined, it would be your duty to find him guilty of murder, as charged in the indictment. But, if you conclude that he is not guilty of murder, you will next determine whether he is guilty of manslaughter.

It is not necessary to read to you the words of the statute defining manslaughter, for the common-law definition is substantially the same as that given by the Revised Statutes. 162 U. S. 320, 16 Sup. Ct. 842, 40 L. Ed. 983; 162 U. S. 476, 16 Sup. Ct. 863, 40 L. Ed. 1043. And at common law voluntary manslaughter, which is the only kind of manslaughter necessary here to be considered, was the unlawful and intentional killing of another without malice, on sudden quarrel or in heat of passion. 2 Whart. Cr. Law (6th Ed.) § 931. To reduce the killing from murder to manslaughter, the provocation, to be available, must have been reasonable and recent, for no words or slight provocation will be sufficient; and, if the party has had time to cool, malice will be inferred, and the homicide will be murder. 2 Bouv. Law Dict. p. 100; see U. S. v. Carr, 1 Woods, 480–487, Fed. Cas. No. 14,732; U. S. v. Cornell,

2 Mason, 60, 25 Fed. Cas. 646 (No. 14,867). The provocation which is allowed to extenuate in the case of homicide (that is, reduce the killing from murder to manslaughter) must be something which a man is conscious of,—which he feels and resents at the instant the act which he would extenuate is committed. All the circumstances of the case must lead to the conclusion that the act done, though intentional of death or great bodily harm, was not the result of a cool, deliberate judgment, and previous malignity of heart, but solely imputable to human infirmity. 1 Russ. Crimes (6th Ed.) p. 38, § 6. Manslaughter differs from murder in this: that, though the act which occasioned the death be unlawful, or likely to be attended with bodily mischief, yet the malice, either expressed or implied, which is the very essence of murder, is presumed to be wanting, and, the act being imputed to the infirmity of human nature, the punishment is proportionably lenient. 2 Whart. Cr. Law (6th Ed.) § 932. In this connection it has been said by the supreme court (and you are so instructed) that:

"The law, in recognition of the frailty of human nature, regards a homicide committed under the influence of sudden passion, or in hot blood, produced by adequate cause, and before a reasonable time has elapsed for the blood to cool, as an offense of a less heinous character than murder. But if there be sufficient time for the passion to subside, and shaken reason to resume its sway, no such distinction can be entertained. And if the circumstances show a killing 'with deliberate mind and formed design,' with comprehension of the act and determination to perform it, the elements of self-defense being wanting, the act is murder. Nor is the presumption of malice negatived by previous provocation, having no causal connection with the murderous act, or separated from it by such an interval of time as gives reasonable opportunity for the excess of fury to moderate." Anderson v. U. S., 170 U. S. 510, 511, 18 Sup. Ct. 697, 42 L. Ed. 1126.

The facts in this case you may readily recall. There is evidence in the case tending to show that prior to the killing, in February, 1900, bad feeling existed on the part of the deceased against the defendant, and, further, that the defendant and the deceased a short time prior to the killing became engaged in a personal altercation. In killing the deceased in the manner and under the circumstances as detailed by the testimony, was the defendant actuated by malice, or was the fatal shot fired in the heat of passion, and upon sufficient provocation? This question you must answer for yourselves. After all, as the court has already stated, the question to be determined is the existence or nonexistence of malice accompanying the killing, so far as the offenses of murder and manslaughter are concerned. Did the defendant kill the deceased with malice? If so, the crime is murder. Was the killing unlawfully committed without malice, but in sudden heat of passion? If yea, the offense is manslaughter. In all cases the question is one for the jury to determine, and in solving it they should consider and analyze all the facts and circumstances in evidence, and from a consideration of them all they must say whether the defendant is guilty of the one crime or the other.

You will next inquire whether the homicide was committed in necessary self-defense, and was hence excusable in the eye of the law. The taking of human life in defense of one's person cannot be ex-

cused except upon the ground of necessity. Such necessity must be imminent, or, rather, it must be apparently imminent, as hereinafter explained, at the time the mortal blow is given; and no man can avail himself of such necessity if he bring it upon himself. Beard v. U. S., 158 U. S. 561, 15 Sup. Ct. 962, 39 L. Ed. 1086. See Bird v. U. S., 180 U. S. 361, 362, 21 Sup. Ct. 403, 45 L. Ed. 570. "Where a difficulty is intentionally brought on for the purpose of killing the deceased, the fact of imminent danger to the accused constitutes no defense." Wallace v. U. S., 162 U. S. 471, 16 Sup. Ct. 861, 40 L. Ed. 1042. It is said by a learned author (and you are so instructed) that in fact and experience the boundaries separating homicide in self-defense and manslaughter are in some instances scarcely perceivable, though in consideration of law they have been fixed. In both cases it is supposed that passion has kindled on each side, and blows have passed between the parties; but in the case of manslaughter it is presumed that the combat on both sides has continued to the time the mortal stroke was given, or that the party giving such stroke was not at that time in imminent danger of death. And the true criterion between them is stated to be this: When both parties are actually combatting at the time the mortal stroke was given, the slayer is guilty of manslaughter; but if the slayer has not begun to fight, or, having begun, endeavors to decline any further struggle, and afterwards, being closely pressed by his antagonist, kills him to avoid his own destruction or the infliction upon himself of serious bodily injury, this is homicide excusable by self-defense. Before a person can avail himself of the defense that he used a weapon in defense of his own life, the jury must be satisfied from the testimony that the defense was necessary, that he did all he could consistently with his own safety to avoid it, and that it was necessary to protect his own life, or to protect himself from such serious bodily harm as would give him a reasonable apprehension that his life was in immediate danger. If he used the weapon, having no other means of resistance, and if he retreated as far as he could with safety to himself, the homicide would be excusable. 3 Russ. Crimes (6th Ed.) 207, 208. To illustrate: If, not having brought the trouble upon myself, an assailant comes against me with a deadly weapon, apparently meaning to use it, and manifests that it is his intention to take my life or to inflict upon me great bodily harm, then I may kill him, when necessary to repel the assault, to save my own life, or to protect myself from great bodily injury; and in such case the homicide would be excusable in law. That is the general rule, but it must be taken with its qualifications. And (1) it is my duty when attacked to retreat as far as the fierceness of the assault will permit; that is, it is the duty of the person assailed to abstain from the infliction of death until he has retreated as far as he can with safety to himself. (2) The danger apprehended from the assailant need not be actually imminent and irremediable. It need only be apparently so; that is, the belief of danger that the assailed person has must be an honest and sincere belief, and it must not be negligently formed, but it must be founded upon reasonable

grounds. And, in determining whether it is founded upon reasonable grounds, the jury are not to conceive of some ideally reasonable person, but they are to put themselves in the position of the assailed person, with his physical and mental equipment, surrounded with the circumstances and exposed to the influences with which he was surrounded and to which he was exposed at the time. If, with these tests applied,—that the belief is honest and sincere; that it is not negligently formed, but is reasonably grounded,—the jury are satisfied that there was then an apparently imminent danger of death or serious bodily harm to the person assailed, he is entitled to act upon the appearances. U. S. v. King (C. C.) 34 Fed. 308, 309. Applying, then, the law to the facts of the case, and remembering the testimony as to the threats made by the deceased against the defendant, the feeling of the former against the latter, and recalling the situation and circumstances of the parties at the time the fatal shot was fired, and all other facts and circumstances in evidence, you will determine whether the homicide committed by the defendant was committed in self-defense, and was therefore excusable, or whether it was murder or manslaughter, and return your verdict accordingly.

You are further instructed that the presumption of law is in favor of the innocence of the defendant until his guilt shall have been established to the satisfaction of the jury beyond a reasonable doubt. If, therefore, upon a consideration of the evidence in this case, you entertain a reasonable doubt of the defendant's guilt, you will give him the benefit of it, and acquit him. In a criminal case, as is the present one, the burden is upon the government to establish by evidence the guilt of the defendant beyond a reasonable doubt, and that burden rests upon the government throughout the entire case. "Reasonable doubt" has been defined (and you are so instructed) as follows:

"A reasonable doubt is a doubt based on reason, and which is reasonable in view of all the evidence; and if, after an impartial comparison and consideration of all the evidence, you can candidly say you are not satisfied of the defendant's guilt, you have a reasonable doubt. But if, after such impartial comparison and consideration of all the evidence, you can truthfully say that you have an abiding conviction of the defendant's guilt, such as you would be willing to act upon in more weighty and important matters relating to your own affairs, you have no reasonable doubt."

You are the exclusive judges of the credibility of the witnesses and of the weight to be attached to their testimony, and you will give it such weight as you deem it to be entitled to under all the circumstances of the case.

In concluding this charge, your attention is directed to the form of verdict which you may return. In cases of this character the law mercifully provides that, "when the accused is found guilty of the crime of murder, * * * the jury may qualify their verdict by adding thereto, 'without capital punishment'; and whenever the jury shall return a verdict qualified as aforesaid, the person convicted shall be sentenced to imprisonment at hard labor for life." 29 Stat. 487. Hence, if you find the defendant guilty of murder, and wish to

add the qualification mentioned to your verdict, you will return it in the following form: "We, the jury, find the defendant, Reuben Lewis, guilty of murder, as charged in the indictment, without capital punishment." If, however, you do not wish to add the qualifying words, "without capital punishment," your verdict should be simply: "We, the jury, find the defendant, Reuben Lewis, guilty of murder, as charged in the indictment." Under the latter form of verdict, the death penalty necessarily attaches. If you conclude that the defendant is not guilty of murder, but is guilty of manslaughter, your verdict should be as follows: "We, the jury, find the defendant, Reuben Lewis, not guilty of murder, but guilty of manslaughter." And, if you find that he is not guilty of either offense,—murder or manslaughter,—you will say: "We, the jury, find the defendant not guilty."

Verdict of manslaughter.