## J. O. POWDRILL v. THE STATE.

### No. 1140.   Decided May 24, 1911.

#### 1.—Murder—Evidence—Expert Opinion—Position of Parties.

Upon trial of murder, it was reversible error to permit a physician who testified as to the range of the shots in the body of the deceased, to testify that the shot which took effect under the left arm of the deceased was the first shot fired, he not being an eyewitness as to the position of the parties.

#### 2.—Same—Evidence—Shorthand Facts—Defendant's Demeanor.

Upon trial of murder there was no error in permitting the State's witness to testify that she could tell that the defendant was mad from his manner, his walk, his looks, the way he cleared his throat and the peculiar expression about his face, etc. This was not a conclusion, but a shorthand rendering of the facts.

#### 3.—Same—Rule Stated—Shorthand Facts—Opinion of Witness.

The opinion of a witness, so far as it consists of the statement of the effect produced upon the mind, which can not be so described as that the jury itself can determine the facts, is primary evidence, and is admissible.

#### 4.—Same—Evidence—Affidavit—Papers in Suit—Motive.

Upon trial of murder, there was no error in permitting the State to show that the wife of the defendant had instituted a divorce suit against him and secured an injunction restraining defendant from disposing of any of their property, and that she made affidavit that he violated this injunction, it having been shown that the deceased acted with said plaintiff in these proceedings; but the detailed allegations in said papers were not admissible.

#### 5.—Same—Evidence—Motive—Other Transactions.

Upon trial of murder, there was no error in permitting the State to show a previous altercation between the defendant and the deceased growing out of a lawsuit between defendant's wife and the defendant, the deceased siding with the mother; but the details of the fight were inadmissible.

#### 6.—Same—Charge of Court—Cooling Time—Murder in Second Degree.

Where, upon trial for murder, the evidence showed that the defendant was very much angered and agitated when he first was informed that his wife had made an affidavit seeking to have him punished for a violation of an injunction suit, and that the deceased was instrumental in securing this affidavit, and that this occurred about thirty minutes before the homicide, the court should have charged on the question of cooling time, that if the mind of defendant at the time of the killing was incapable of cool reflection, that defendant would be guilty of murder only in the second degree.

**7.—Same—Rule Stated—Inadequate Cause—Previous Altercation.**

A charge on cooling time is ordinarily held to arise in cases when the testimony showed an altercation or fight between the deceased and the accused prior to the killing; but where anything occurs prior to the killing that excites and disturbs the mental equilibrium of the accused and shows that sufficient time has not elapsed for the accused to become cool, calm and deliberate, a charge on cooling time should be submitted.

**8.—Same—Charge of Court—Manslaughter.**

If the issue of manslaughter is raised by the evidence, the court should give an affirmative charge thereon, and likewise on the issue of self-defense if the same is raised by the evidence.

**9.—Same—Provoking Difficulty.**

Where, upon trial for murder, the evidence did not show that the deceased provoked the difficulty, there was no error in the court's failure to charge thereon.

Appeal from the District Court of Shelby. Tried below before the Hon. James I. Perkins.

Appeal from a conviction of murder in the first degree; penalty, life imprisonment in the penitentiary.

The opinion states the case.

*D. M. Short & Sons,* for appellant.—On question of expert witness and position of parties: McCormick v. State, 52 Texas Crim. Rep., 493; Williams v. State, 30 Texas Crim. App., 429.

On the question of the court's charge on manslaughter: Ainsworth v. State, 11 Texas Crim. App., 339; Rutherford v. State, 15 Texas Crim. App., 236; McLaughlin v. State, 10 Texas Crim. App., 340; Neyland v. State, 13 Texas Crim. App., 536; Tow v. State, 22 Texas Crim. App., 175; Jones v. State, 29 Texas Crim. App., 340; Connell v. State, 45 Texas Crim. Rep., 142; Freeman v. State, 46 Texas Crim. Rep., 318; Sowell v. State, 32 Texas Crim. Rep., 482; Childers v. State, 33 Texas Crim. Rep., 509; Williams v. State, 15 Texas Crim. App., 617; Dean v. State, 47 Texas Crim. Rep., 243; Venters v. State, id., 280; Melton v. State, id., 451; Frank v. State, id., 638; Keith v. State, 50 Texas Crim. Rep., 63; Barnes v. State, 133 S. W. Rep., 887.

Upon the question of cooling time: Watson v. State, 50 Texas Crim. Rep., 171; Mundine v. State, 37 Texas Crim. Rep., 5; Castro v. State, 40 S. W. Rep., 985; Blocker v. State, 135 S. W. Rep., 131; Ross v. State, 53 Texas Crim. Rep., 277; Dixon v. State, 51 Texas Crim. Rep., 555; Rice v. State, id., 255; Kammacher v. State, id., 118; Cooper v. State, 49 Texas Crim. Rep., 28; Manning v. State, 48 Texas Crim. Rep., 55.

Upon question of introducing injunction papers: Moody v. State, 24 Texas Crim. App., 458; Pinckard v. State, 13 Texas Crim. App., 373; Allison v. State, 14 Texas Crim. App., 402; Dill v. State, 1 Texas Crim. App., 278; Doffin v. State, 11 Texas Crim. App., 76; Binns v. State, 26, Am. Rep., 48; 6 Ency. of Ev., page 718.

*C. E. Lane,* Assistant Attorney-General, for the State.—Upon question of submitting animus growing out of previous fight between de-

fendant and deceased: McKinney v. State, 8 Texas Crim. App., 626; McCoy v. State, 25 Texas, 33; Carr v. State, 41 Texas, 543; Dill v. State, 1 Texas Crim. App., 278; Hubby v. State, 8 Texas Crim. App., 597; George v. State, 17 Texas Crim. App., 513; Mathis v. State, 34 Texas Crim. App., 39; Somerville v. State, 6 Texas Crim. App., 433; Howard v. State, 25 Texas Crim. App., 686; Russell v. State, 11 Texas Crim. App., 288; Johnson v. State, 28 Texas Crim. App., 17.

Upon question of admitting injunction proceeding: Turner v. State, 33 Texas Crim. Rep., 103.

PRENDERGAST, JUDGE.—The appellant was indicted for killing his son, Oscar Powdrill, on June 23, 1910; convicted of murder in the first degree and given a life sentence. Several questions are raised which will be necessary to discuss and determine.

1. By appellant's fourth bill of exceptions he complains that the court permitted Dr. Bryan to testify which shot of the two shots fired by appellant at the deceased was the shot that took effect under the left arm, and that this was the first shot fired. The testimony complained of is shown by the bill to have been elicited in this way: The court asked the witness if he could tell whether this wound under the left arm was an independent wound or a different shot, or the same shot that entered under the armpit. The witness answered that he could tell. "Q. Well, which was it? A. The first shot was the one under the arm. Court: And the wound on the arm was not inflicted by the same shot? A. It was not." The objection to this testimony was "that it was not such a fact as an expert could answer; that the witness was not an eyewitness and the jury were just as able to determine whether it was an independent shot or the same·shot, or whether it was the first shot or the second shot, and it was their province under the circumstances to determine this question."

In this case there were no eyewitnesses except the appellant to the killing. The appellant testified to such a state of facts as from his standpoint tended to show that he was acting in self-defense. A very material fact in the case was whether the first shot entered under the arm or not. We think it clear that this fact could not be testified to by the doctor, and that it was not of such a character as an expert could give his opinion or conclusion about. It was for him to detail the character, location, etc., of the wounds, and for the jury to determine this material fact. We think the court erred in not excluding this evidence of the doctor. Williams v. State, 30 Texas Crim. Rep., 429; Thompson v. State, 30 Texas Crim. Rep., 325; McCormick v. State, 52 Texas Crim. Rep., 493; Cooper v. State, 23 Texas, 331.

2. Other bills of exception show that appellant objected to the testimony of Nettie Powdrill, to the effect that just before the killing, when appellant passed the residence where she, her mother, and other members of the family were sitting, in speaking to them, he spoke angry or in an angry manner. And the testimony of Gracie Powdrill,

that she could tell from his manner, his walk, his look, the way he cleared his throat, and that his face was not straight, and there was a peculiar expression about his face, and that from all this she said "he was mad and looked mad," was also objected to. Like objection was made to the testimony of J. C. Walker, to the effect that at the time the appellant learned from the witness that the appellant's wife, accompanied by her son Oscar, the deceased, had just made an affidavit against him charging him in effect with violating the injunction in having sold some hogs, and thereby seeking to have him punished for violating the injunction, "that there was a peculiarity in the manner, looks and tone of voice of appellant while talking to the witness about this," and that "he spoke in a trembling tone of voice, and that his face was red and flushed, and that he was much excited, bothered or something, and from his movements seemed to be somewhat in a hurry."

The objections to all this testimony in effect was that the testimony was but the expression of a conclusion or opinion of the witness, and not a statement of the facts, and that they were prejudicial to the appellant.

In further explanation of the material facts surrounding this case it seemed to be important, both from the State's and the appellant's standpoint, to show the mental condition of the appellant and the cause therefor, occurring shortly and immediately before the killing; it seems that the appellant's wife, about two years prior to this, had brought suit for divorce against the appellant, and had secured from the court an injunction against him. The deceased, Oscar, his oldest son, as the appellant claims and the evidence tended to show, had taken sides with the mother in the controversy between the father and the mother, and out of this some ill-feeling at the time had existed between them, and pending that first divorce suit the father and son had a fight thereabouts, and the father inflicted, with a knife or some other instrument, a wound upon deceased. That divorce suit for some reason was dismissed, and a reconciliation effected between appellant and his wife. Shortly prior to the killing the wife instituted another divorce suit against appellant and secured an injunction against him, among other things, restraining him from selling or disposing of their hogs. That the deceased, Oscar, his son, in that case took sides with his mother against the appellant, that the appellant, as the mother and son claimed, had violated this last injunction by selling some of the hogs, and on the day of the killing, within twenty or thirty minutes prior thereto, the son had accompanied the mother to one of the witnesses, Walker, the notary before whom she had made an affidavit charging that the appellant had sold some of the hogs, and seeking to have him punished for a violation of the injunction. That the deceased, as the appellant was informed and believed, was aiding his mother against him at this time in this particular proceeding, and when the fact was communicated to him by Walker, before whom the

affidavit had just been made, he became angry, etc., and proceeded to hunt the deceased, and killed him within twenty or thirty minutes of the time he heard and knew of this charge against him.

We think it well settled now that the opinion of a witness, so far as it consists of the statement of the effect produced upon the mind which can not be so described as that the jury itself can determine the fact, is primary evidence, and is admissible. In other words, that it is a mere shorthand rendering of the facts, and is admissible. In our opinion the court properly permitted each of these witnesses to testify substantially as shown by the bills of exception. Bennett v. State, 39 Texas Crim. Rep., 639; Meyers v. State, 37 Texas Crim. Rep., 208; Powers v. State, 23 Texas Crim. App., 42; Miller v. State, 18 Texas Crim. App., 232; Cooper v. State, 23 Texas, 113.

3. Other bills of exception of the appellant show that he objected for various reasons to the introduction in evidence of the said affidavit made by his wife against him before Walker, a notary public, twenty or thirty minutes before the killing, charging him with having violated the injunction and seeking to have him punished therefor, and to the petition, order and writ of injunction in the divorce suit.

On this subject it is our opinion that it was clearly permissible for the State to prove that such a divorce suit had been instituted by Mrs. Powdrill against the appellant, and that therein she had secured an injunction restraining the appellant from disposing of any of their property, including their hogs, and also prohibiting him from going upon the premises—the home—where the wife lived, and bothering or interfering with her or her family. Also that she had made the affidavit above stated, and the substance thereof. This proof could be made by the introduction of so much of the proceedings in said case as would show these material facts, but it is our opinion that the grounds of the divorce and the allegations thereabouts, and the grounds of the injunction and the allegations thereabouts, wherein the appellant is charged with cruel treatment and other wrongful acts, were clearly not admissible. Such allegations could have no effect other than to influence the minds of the jury against the appellant, because of her claimed mistreatment of his wife. On another trial the court can control this matter so as to permit the material facts to be shown, and the immaterial, irrelevant matters thereabouts excluded.

4. Other bills of the appellant complain of the action of the court in permitting the witnesses Gracie Powdrill and Bob Powdrill to testify as to the particulars of a fight between the appellant and the deceased, growing out of the appellant's claimed interference and taking sides with his mother and interfering with appellant's business in the first divorce suit. In connection with this, various threats were also testified to by these or other witnesses. Without going into the details of this matter, it is our opinion that the fact of a fight or altercation between the appellant and the deceased, which grew out of and was caused by the claimed interference by the deceased with the appellant

in his affairs and his taking sides with his mother, and that in such fight or altercation the appellant cut the deceased, was admissible; but the details of the fight, other than the claimed cause therefor, were inadmissible. This matter can also be controlled by the court on another trial of the case so as to permit what was admissible and exclude what was inadmissible in accordance with this opinion.

5. Many complaints are made of the charge of the court and various subdivisions thereof. The court charged on murder in the first degree, murder in the second degree, self-defense and manslaughter, but did not charge on cooling time.

The appellant claims that the evidence showed such a state of agitation, of anger, resentment, etc., when he first was informed and learned that his wife had made the affidavit seeking to have him punished for disposing of the hogs in violation of the injunction, and that the son, deceased, was connected therewith or instrumental therein, as to call for a charge on cooling time, claiming that this agitation, anger, etc., rendered his mind incapable of cool reflection, and that he was thereby not shown to have killed the deceased with express malice, and that instead of being guilty of murder in the first degree on that account the jury should have been authorized to have found under an appropriate charge on cooling time that he was guilty of murder in the second degree instead of in the first degree. The appellant also complains that the court, for the same reason and in the same way, ought to have charged on cooling time with reference to manslaughter.

It is well established in this State, "if the mind of the slayer is not cool and deliberate when the intent to kill is formed, but is laboring under excitement, or passion, this would reduce the homicide to murder in the second degree." Kannmacher v. State, 51 Texas Crim. Rep., 118; Gaines v. State, 53 S. W. Rep., 623; Thomas v. State, 45 Texas Crim. Rep., 111, 74 S. W. Rep., 36; Boyd v. State, 28 Texas Crim. App., 137. It seems to be also well established that when the evidence calls for it it is necessary in a murder case to charge on cooling time as between murder in the first and murder in the second degree. Dixon v. State, 51 Texas Crim. Rep., 555; Rice v. State, 51 Texas Crim. Rep., 257; Cooper v. State, 49 Texas Crim. Rep., 28; Manning v. State, 48 Texas Crim. Rep., 55. And this whether the appellant's testimony shows it or it is shown by the testimony of any other witness or witnesses. It is true that a charge on cooling time is ordinarily held to arise in cases when the testimony shows an altercation or fight between the deceased and the appellant other and different, and shortly prior to the time of the killing, but we think that it is not essential that a fight or previous altercation should occur. Anything that occurs to the appellant shortly prior to the killing, in connection with deceased, which so excites or angers or otherwise disturbs his mental equilibrium, and that sufficient time after this has not elapsed to show that he has time to become cool, calm and deliberate, that it would be proper to charge on cooling time. These matters can be

properly charged, if the evidence raises them, on another trial of this case.

6. Complaint is also made of the charge of the court on the subject of manslaughter, in that it does not submit to the jury that question affirmatively, but in a negative manner, to the injury of the appellant. This criticism may be correct, and the court on another trial can so charge as that this criticism can not correctly be made.

A somewhat like objection is made to the charge of the court on self-defense. It is unnecessary for us to go into detail in the discussion of the appellant's various objections to this and other charges of the court. We merely call attention to them so that the court can, on another trial, give the charges on these subjects affirmatively, as well as negatively, if necessary.

In our opinion the record does not show any such state of facts as called for a charge on provoking the difficulty by deceased at the immediate time of the killing, as claimed by appellant.

For the errors above pointed out the judgment is reversed and the cause remanded.

*Reversed and remanded.*