## CORDA COOPER v. THE STATE.

### No. 3144.   Decided November 22, 1905.

**1.—Assault with Intent to Murder—Cooling Time—Charge of Court.**

Where on a trial for assault with intent to murder, the evidence showed that there were two difficulties, both close together in point of time, and adequate cause and cooling time were limited in the court's charge to the first difficulty, there was reversible error, especially where such charge also cut the jury off from the consideration of adequate cause in the second difficulty, and further prevented the jury to pass upon the question of aggravated assault viewed from the standpoint of the second difficulty.

**2.—Same—Charge of Court—Manslaughter—Aggravated Assault.**

Upon trial for assault with intent to murder the evidence tended to show that defendant was acting in self-defense in firing the first, and perhaps the second shot, after which the prosecutor fled and defendant fired at him as he fled, the court should have charged the jury upon manslaughter as well as upon aggravated assault, and the charge which prevented the jury from considering adequate cause and cooling time with reference to subsequent facts was reversible error.

**3.—Same—Self-Defense—Threatened Assault and Apparent Danger.**

See opinion for evidence which necessitated a charge on the law of threatened assault and apparent danger.

**4.—Same—Doctrine of Retreat—Common Law Rule.**

Under the law of Texas the man whose rights are attacked can stand his ground and has the legal right to do so, and the attacking party, or the one in the wrong, must do the retreating if any is required. This is different from the common law rule.

Appeal from the Criminal District Court of Harris.   Tried below before Hon. J. K. P. Gillaspie.

Appeal from a conviction of assault with intent to murder; penalty, five years imprisonment in the penitentiary.

The opinion states the case.   The former appeal in this case is reported in the 47 Texas Criminal Report.

*E. T. Branch,* for appellant.—On question of adequate cause: Orman v. State, 24 Texas Crim. App., 495; Manning v. State, 12 Texas Ct. Rep., 754; Ivory v. State, decided May 17, 1905; Wharton Am. Law, 10 ed., sec. 480, and notes; Jones v. State, 33 Texas Crim. Rep., 492; Eanes v. State, 10 Texas Crim. App., 421; Ferguson v. State, 49 Ind., 33; Hobbs v. State, 16 Texas Crim. App., 517; Poole v. State, 76 S. W. Rep., 565. On question of apparent danger: Baltrip v. State, 30 Texas Crim. App., 545.

*Howard Martin,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—This conviction was for assault with intent to murder, and his punishment fixed at confinement in the penitentiary for a term of five years.   This is the second appeal.   See Cooper v. State, 12 Texas Ct. Rep., 620.   The facts upon this trial are

somewhat changed from those developed on the previous trial. In a general way the facts are that appellant was in the employ of Hanson, as was the assaulted party Jones. Jones was the cook, and had charge of the pantry and kitchen. Appellant was sent to the pantry by Hanson, his employer, to secure some poison, for the purpose of killing cockroaches. While in the pantry on this mission, Jones approached and ordered him out. What occurred in there is widely divergent under the testimony of appellant and Jones. Jones testifies that when he saw appellant in the pantry he asked him what he was doing. Appellant told him "It was none of his damned business." Jones then asked, "if it is none of my business, whose business is it?" Word were multiplied until Jones became angry, grabbed a glass, and he states they rushed at one another, appellant having a plate in his hand for the purpose of getting the poison. As he approached appellant, Jones changed the glass from his right to his left hand, and struck appellant with his right hand on his face. Appellant retreated, saying nothing, and Jones went back into the kitchen. Some fifteen or twenty minutes afterwards, appellant returned, having two big cups in his hands, walked into the kitchen, where Jones was grinding the meat for croquettes, called Jones a damned black son of a bitch; and said he intended to kill him. Jones grabbed the same glass he had previously, went around the table, and appellant backed away into the door. Just as he passed the door, he shot: the first shot took effect in the breast, the second in the head, the third in the hand, and the fourth in the leg of Jones. When the last three shots were fired, Jones states that he was in the yard, had run out of the kitchen and was shot out in the yard by appellant, who was shooting through the door, and was protecting himself with the closet door. On the former trial it was shown that this witness stated that the time elapsing between the two difficulties was two minutes. This time he says it was fifteen or twenty minutes. He was contradicted in several matters on this trial as to what his testimony was on the former trial.

Jones denied throwing the cleaver at appellant as he stepped into the kitchen the second time. He further denies that he was approaching appellant with a large knife, and was within ten or twelve feet of him at the time the first shot was fired. This knife was about two and one-half feet long, had a sharp edge, and was the knife used in the kitchen to cut meat.

Hanson testified that he was the proprietor of the hotel, and both of these parties were in his employ; that he sent appellant to the closet for cock-roach poison. This witness contradicts Jones in several respects.

This is the State's case in a general way.

Appellant's theory of the case is to the effect that when he entered the pantry Jones came to him, and inquired what he was doing in there. Being informed that Hanson had sent him for cock-roach poison, Jones ordered him out. Appellant asked, "What is the matter with you";

that he was surprised at his conduct." Jones said, "Never mind what's the matter, you get out of here." Jones picked up a glass, and again ordered appellant out, stating if he did not get out he would knock him down. Appellant stepped outside the door, and told Jones he had better not hit him with that glass. He said, "I will hit you with it." Appellant said, "You had better not," and stepped into the hall. Jones came out, and as he came out changed the glass from his right to his left hand, and struck appellant over the right eye with his right hand a severe blow, knocked his head back, and raised a knot over the eye, which remained there for a day or two, and caused him pain. As appellant retreated through the door, Jones threw the glass at him. He went thence into the "office" and got Hanson's pistol, and went back to secure the poison. This occupied about two minutes. As he went back he took the pistol, knowing that Jones had made threats, and he thought he might have trouble with him, and he took this pistol along in his pocket to protect himself. Just as he got to the middle door and swung it open, Jones discovered him from where he was in the kitchen. When Jones saw him coming through the door, he threw his cleaver at him, which brushed his pants' leg. This cleaver is described as weighing about "a pound or two," with a sharp edge, and used for cutting meat. Appellant drew his pistol and fired. He says he did not pull the pistol until Jones started in his direction. He had thrown the cleaver at appellant, and was approaching with a butcher knife about two and one-half feet long, which was also used in chopping up meat. Appellant denies shooting at Jones in the yard. It seems Jones was about ten or twelve feet from appellant, approaching him with the knife at the time the first shot was fired. One of the shots knocked the knife out of Jones' hands; that Jones then broke and ran to the woodpile, got a stick of wood, and appellant then ran. This is perhaps a sufficient statement, without going further into the details as to the cross examination and contradictions occurring in the testimony.

Appellant criticises the charge of the court on cooling time, which is as follows: "You are instructed that, although you may find that defendant was struck by said Wade Jones, thereby causing pain or bloodshed, but if there had sufficient time elapsed thereafter, before said shooting, in which time sufficient had passed for the defendant's passion or emotion to have cooled or subsided, and his reason to have resumed its sway, then and in that event you will not consider this portion of this charge relating to sudden passion and adequate cause, but otherwise if you find that it had not, and in judging thereof you will consider the condition and temper of the defendant at the time and in connection with all the facts and circumstances in evidence." This charge is criticised for several reasons. The writer has always thought, and the rule has been so enunciated until the recent case of Franks v. State, Austin Term, 1905, that cooling time was a question of fact and not of law; and where passion was created by adequate cause, and the mind was therefore incapable of cool reflection, and the shooting oc-

curred with the mind in this condition, the killing would be manslaughter. And if the mind was enraged, without adequate cause, and the shooting occurred, it would be murder in the second degree. But, without entering into a discussion of that matter, it is clear that this charge is wrong from any standpoint. Adequate cause and cooling time are here limited to the first difficulty; and adequate cause is thus eliminated from the second difficulty, because the court informs the jury that if sufficient time had elapsed for the defendant's passion or emotion to cool and subside, and his reason to resume its sway, then they would not consider the question of sudden passion and adequate cause, but if they believed otherwise and found that sufficient time had not elapsed, and in judging of it they could consider the condition and temper of defendant at the time, and in connection with all the facts and circumstances. What is meant is not clear. If the mind was excited beyond cool reflection, by reason of the previous difficulty from the pain and the blow, and but two minutes had elapsed, then it was hardly possible the mind could have become cool. In fact, it would have been a very remarkable statement that the mind could become cool under these circumstances within the short space of two minutes. If as a matter of fact, fifteen or twenty minutes had elapsed, and the jury had concluded that in that time, the mind had become cool, sufficiently at least for reason to resume its sway, and permit him to have cooled, then this charge cuts the jury off from the consideration of any and all facts that occurred upon the second meeting. And it further cut off the consideration of aggravated assault, viewed from the standpoint of the second difficulty. If, when appellant returned the second time to secure the poison, his reason had resumed its sway, and Jones threw the cleaver at him, and having missed him picked up the knife and started towards him, and appellant shot while Jones was ten or twelve feet away, it occurs to us that adequate cause can become a part of this case from these facts. The jury may have thought, as they evidently did, that he fired too quick; that he was twelve feet away with a knife with which he could not reach defendant, or at least was not within sufficient proximity to use the knife, and appellant fired too quick. But in any event, a man's mind would hardly be sufficiently cool under those circumstances to authorize the jury to withdraw the question of adequate cause from their consideration, and place it back upon the first meeting. Again, if appellant was acting in his self-defense in firing the first, and perhaps the second shot, at which time Jones says he abandoned the difficulty and fled into the yard, then the subsequent shots, after Jones abandoned the difficulty, would not be in self-defense; but would be of no higher grade than manslaughter, if death had resulted, otherwise aggravated assault. This charge cuts off appellant from this defensive proposition as against assault with intent to murder. Hobbs v. State, 16 Texas Crim. App., 517. We quote from that opinion, as follows: "Again, the learned judge instructed the jury that the defendant's right of self-defense ceased when the danger, real or

apparent, had ceased. This was correct. But suppose, in defending himself against a violent attack, or a supposed violent attack, he became excited by passion to such an extent as to render his mind incapable of cool reflection, and under this state of excitement he carried his right of self-defense too far, used more force than was necessary to his protection, fired one or more shots after all real or apparent danger had ceased, but before his mind had had time to cool, and from wounds thus inflicted death had resulted, would this have been murder? We think not. Suppose the first shot fired by defendant was justifiable, but that the two shots fired by him which struck Whiteley were fired after the danger, real or apparent, which theatened the defendant had ceased, but that he fired the said shots under the immediate influence of sudden passion, arising from the supposed deadly conflict in which an instant before he had been engaged, and fired them before he had reasonable 'cooling time,' reasonable time to realize that he was no longer in any danger, would not this sate of facts, if the shots had killed Whiteley, constitute manslaughter and not murder? We think a homicide under these circumstances would not be of a higher grade than manslaughter." We think this language is directly pertinent to the issues raised by the evidence in this case. In the charge of the court above set out, the question of adequate cause and subsequent cooling time was based on the first meeting exclusively, and before the jury could consider adequate cause and cooling time with reference to subsequent facts, they must find that his mind had not cooled on account of the previous adequate causes and sudden passion. This is so clearly error that it only requires a statement of the proposition given to demonstrate it.

The charge on aggravated assault confines the consideration of the jury to the blow implanted on appellant's head by Jones with his fist, and is the only theory in all the testimony suggested by the court's charge upon which a verdict of aggravated assault could have been predicated. The first difficulty had passed, the parties had separated, appellant had armed himself, and had come back, he says, on a peaceful mission and to attend to the duties of his employer, and Jones made the second attack on him. If, as before stated, he acted in self-defense against Jones' attack with the knife and cleaver, and Jones abandoned the difficulty and fled, and appellant shot again at Jones, after he had abandoned the difficulty, this could not be justifiable on his part, but it would certainly authorize the jury to convict of aggravated assault, and of no higher offense. This was ignored by the court's charge in regard to this matter, and the jury were confined in their consideration in regard to the question of aggravated assault to the blow implanted on the head of appellant by the fist of Jones in the first difficulty, which Jones says occurred fifteen or twenty minutes before the shooting. It is true, and it is the law, that if appellant's mind was enraged by the adequate cause as inflicted at the time he returned with the pistol, and his mind was then incapable of cool reflection, and he

then shot Jones, without justification or in his self-defense, this would be manslaughter, if death resulted, and aggravated assault as a homicide did not occur. This theory was submitted by the court, but the other theory of aggravated assault, was not, which was as prominent in this case as the first, and the jury may have thought, and doubtless did, that the court did not believe the testimony of the State's witnesses in this regard, but believed appellant made the attack in an unjustifiable manner and with intent to murder.

The charge in regard to self-defense is criticised, because it confines the jury to the consideration of an actual assault and one of real danger was real or only apparent, if danger reasonably appeared to defend-other trial, the court should bear this in mind and charge the jury in accordance with the testimony relied upon to prove that theory of the case.

Again, the charge is criticised because it required defendant to retreat unless he was assaulted. The charge is, as follows: "You are instructed that in judging the defendant, it must be from his standpoint, and as it reasonably appeared to him, judged by all the facts and circumstances in evidence, and it would make no difference if the danger, instead of a threatened assault and apparent danger. Upon an-ant; and if assaulted the defendant would not be bound to retreat to the danger was apparent to him." Suffice it to say that a party who has the right of self-defense from the standpoint of apparent danger, or any other danger that threatens his life or serious bodily injury to his person, is not bound to retreat, and he can stand his ground, even though an assault has not been made upon him. Under our law if anybody is required to retreat it is not the man acting in self-defense, it is the attacking party: it is the man bringing on the difficulty that is responsible. As between the attacking party and the attacked, it is the duty of the party attacking to desist and retreat. It was the other way at common law: there the man in the right was bound to retreat to the wall. That is not so with us. The man whose rights are attacked, can stand his ground, has the legal right to do so, and the attacking party, or the one in the wrong, must do the retreating, if any is required. Ours is the correct rule; the English is the incorrect rule when applied to our laws.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*