FEDERICO GOMEZ V. THE STATE.

No. 3250. Decided October 21, 1914.

Rehearing denied November 11, 1914.

**1.—Murder—Venue—Jurisdiction—New County—Change of Venue.**

Where the offense was committed on March 29, 1913, the indictment returned on May 27th thereafter in Brooks County, and the law creating Jim Hogg County out of said Brooks County went in force July 1, following, the court properly transferred the cause to said Jim Hogg County where the offense was committed, and from where the venue was properly changed by the trial judge to Webb County.

**2.—Same—Jurisdiction—Venue—Rule Stated—Division of County.**

By the common law, and the decisions of this court, crimes are local, and must be prosecuted in the county where they are committed, and where the county is divided and the crime was committed before the division, the same must be prosecuted in the new county in which the offense was committed. Following Hernandez v. State, 19 Texas Crim. App., 408, and other cases.

**3.—Same—Statement of Facts—Approval.**

Where, upon trial of murder and the assessment of the death penalty, the record did not show on appeal that the alleged statement of facts was ever

presented to, or approved by, the trial judge, the same can not be considered on appeal. Following Lawrence v. State, 7 Texas Crim. App., 192, and other cases.

**4.—Same—Evidence—Conversations—Res Gestae—Rule Stated.**

Where, upon trial of murder, the conversation the witness had, and the events which led up to the homicide was res gestae, the same was properly admitted in evidence.

**5.—Same—Evidence—Opinion of Witness.**

Upon trial of murder, there was no error in permitting a witness to testify that, prior to the shooting of her sister, the latter was in perfect health, and that she died in fourteen hours after being shot by the defendant and that her death was caused by this shot.

**6.—Same—Evidence—Cross-examination.**

Where, upon trial of murder, the defendant sought on cross-examination to discredit a State's witness, there was no error in permitting the State on redirect examination of the witness to testify that what he had testified to on the trial was true.

**7.—Same—Dying Declarations—Res Gestae.**

Where the statements of the State's witnesses and the deceased were made only a few minutes after the shooting, one as res gestae and the other as a dying declaration, the same was admissible in evidence.

**8.—Same—Jury and Jury Law—Freeholder—Householder.**

Where the jurors were neither freeholders nor householders within contemplation of law, there was no error in excluding them.

**9.—Same—Rule Stated—Freeholder—Householder.**

A single man who remains with his parents, even though he pays them board, is not a householder; neither is a single man a householder who merely rents a room from an occupant of the house.

**10.—Same—Jury and Jury Law—Challenge.**

Where the jurymen objected to were peremptorily challenged by defendant, and no objectionable juror was forced on him, there was no error.

**11.—Same—Argument of Counsel—Husband and Wife.**

Where defendant's wife attended the trial, but was not introduced by him as a witness, there was no error in the district attorney referring to this fact.

**12.—Same—Charge of Court—Statement of Facts.**

Where no exceptions were taken to the charge of the court before it was read to the jury, this court in the absence of a statement of facts will presume that it was correct.

**13.—Same—Death Penalty.**

The contention that there is now no law authorizing the infliction of the death penalty can not be sustained.

**14.—Same—Statement of Facts—Diligence.**

Appellant's attorney must be diligent in the preparation and filing of the statement of facts, and this diligence does not end until the statement of facts is placed in the hands of the trial judge, etc., and the promise of the stenographer to do so is not sufficient.

**15.—Same—Charge of Court—Sufficiency of the Evidence.**

Where, upon trial of murder inflicting the death penalty, the statement of facts was not filed and approved in time, yet if this court considers same, the evidence was sufficient to sustain the conviction assessing the death pen-

alty, under a proper charge of the court, which also submitted the theory of the defense of accidental killing, there was no reversible error.

Appeal from the District Court of Webb. Tried below before the Hon. J. F. Mullally.

Appeal from a conviction of murder; penalty, death.

The opinion states the case.

*Jno. C. North,* for appellant.—On question of want of approval of statement of facts: Johnson v. State, 71 Texas Crim. Rep., 391, 159 S. W. Rep., 848; Sims v. State, 72 Texas Crim. Rep., 533, 162 S. W. Rep., 1154.

*C. E. Lane,* Assistant Attorney General, for the State.—On question of venue and jurisdiction: Nelson v. State, 1 Texas Crim. App., 41; Weller v. State, 16 Texas Crim. App., 200; Republic v. Smith, Dallam, 407; Hernandez v. State, 19 Texas Crim. App., 408.

Upon question of referring to the defendant's wife in not being placed on the witness stand: Mercer v. State, 17 Texas Crim. App., 452; Armstrong v. State, 34 Texas Crim. Rep., 248.

HARPER, JUDGE.—Appellant was convicted of murder, and his punishment assessed at death.

March 29, 1913, appellant shot and killed Santos Mora at the Randado ranch in what was then Brooks County. The Legislature subsequently created a new county, Jim Hogg, and the place where the killing took place was included in the territorial limits of that county. When that county was organized the district judge of Brooks County transferred the indictment to Jim Hogg County. Appellant complains of this action of the court, and says he should have been tried in Brooks County. Mr. Bishop says, "By the common law crimes are local, to be prosecuted in the county of their commission; only in such county can the grand jury inquire into them. Even where a county is divided, a criminal act done before the division is to be prosecuted in the particular new county in which is the place of the offense. The offense is against the State; the trial is in the new county." This is the correct rule, and one followed by our courts. Hernandez v. State, 19 Texas Crim. App., 408; Weller v. State, 16 Texas Crim. App., 200; Nelson v. State, 1 Texas Crim. App., 41. The offense having been committed March 29th, the indictment returned May 27th, and the law creating Jim Hogg County July 1st, it was not only proper but incumbent on the court to transfer the case to Jim Hogg County as that county would have jurisdiction of the offense. And when the District Court of Jim Hogg County convened, if in the opinion of the trial judge that the facts connected with the commission of the offense had gained such wide notoriety that a trial alike fair and impartial to the accused and the State could not be had in that county, he was authorized

to change the venue to Webb County.  Article 626 of Code of Criminal Procedure.

The death penalty having been assessed in this case we can not understand the negligence manifested in the preparation of this record.  The statement of facts bears no evidence that it was ever presented to the trial judge for his approval—at least, in the record before us the statement of facts has not been approved by him, and is not verified in a way that would authorize us to consider it.  Lawrence v. State, 7 Texas Crim. App., 192; Bennett v. State, 16 Texas Crim. App., 236; Johnson v. State, 29 Texas, 492, and note 1169 White's Ann. Code of Criminal Procedure, and authorities there cited.

Mrs. Juana Chapa De Mora was permitted to detail the conversation she had and events that led up to the tragedy.  This was res gestae of the transaction, and properly admitted in evidence.

Carmen Mora was permitted to testify that prior to the shooting her sister, Santos Mora, was in perfect health, and that her sister died in fourteen hours after being shot in the abdomen by appellant, and that her death was caused by this shot.  The bill shows that all this testimony was objected to.  Certainly all of it was admissible, unless it be that portion of it in which she stated her sister's death was caused by this shot, and in our opinion, under the circumstances of this case, the court did not err in permitting the witness to testify to that fact. Federico Gonzales had testified to material facts for the State, and the defendant, on cross-examination, had sought to discredit the witness by showing that he had testified at the examining trial, and attempted to show that he had been induced by another to testify as he had on this trial.  On redirect examination he was permitted to say that what he had testified to on this trial was the truth.  Appellant contends that was "bolstering up" the testimony of the witness.  We hardly think the contention sound under the recitals of the bill, for if by the cross-examination of the witness the defendant had cast a cloud on the truth of the testimony of the witness, the witness stating it was the truth, would add no strength to it.

The statements made by Santos Mora and Andres Salinas were admissible both as dying declarations and as res gestae of the transaction.  The statements were made only a few minutes after the shooting, and it is evident it was but the event speaking.

Neither McClelland, Vasquez nor Sprague were qualified jurors, and the court did not err in so holding.  They were neither freeholders nor householders within contemplation of the law.  A single man who remains with his father and mother, even though he pays them board, does not, because of that fact, become a householder.  And neither is a single man a householder who merely rents a room from an occupant of the house.

As to Mr. Eistetter, if the court erred in refusing to sustain appellant's challenge for cause, he peremptorily challenged the juror, and as no objectionable juror was forced on appellant, this bill would present no error.

Appellant's wife was in attendance on court. The record shows she was present at the time of the homicide, but she was not called as a witness by appellant. The State could not introduce her, and the bill shows that in his argument the district attorney referred to the fact that she had not been introduced as a witness. This was permissible, and the bill presents no error.

No exceptions were taken to the charge of the court before it was read to the jury, and in the absence of a statement of facts we must presume that it fully presents all the issues made by the evidence had on the trial. The contention that there is now no law authorizing the infliction of the death penalty can not be sustained.

The judgment is affirmed.

*Affirmed.*

### ON REHEARING.

#### November 11, 1914.

HARPER, JUDGE.—The statement of facts was not presented to the trial judge for his signature, nor signed by him. The attorney of appellant has filed an affidavit stating that he relied on the court stenographer to present it to the district judge for his approval. The court stenographer has filed an affidavit in which he states he intended to do so, but it was filed by oversight without being presented to the judge for his approval. Judge Mullally writes to the court and says: "It was never my intention not to approve the statement of facts, and it must have been filed inadvertently without my approval, and without it being presented to me. Had I seen it I would have approved it, as it was agreed to by Mr. North and the district attorney."

This case was tried last May, and no effort made to cure this defect in the record until we received the letter of Judge Mullally dated October 30th. We are not authorized to reverse the case because appellant has been deprived of a statement of facts. His attorney must be diligent, and his diligence does not end until the statement of facts is placed in the hands of the trial judge, with request either to approve it, or if he will not do so, to prepare and file a statement of facts. This requisite of the law was not complied with, but appellant's counsel relied on the promise of the stenographer reporting the case to do so for him, and through oversight the stenographer failed to keep his promise to appellant's counsel. But the death penalty being assessed, although the statement of facts did not bear the approval of the trial judge, we have read it. Appellant married Pilar Mora; they separated, and she returned to her father's house, who lived on the Randado ranch. Appellant, after his wife's return to her father's home, also went to this ranch and stayed around there several days. One morning he went to this house, when only the women folks were present, and forced an entrance. After conversing with them a while, he shot at his wife and her mother, Santos Mora, the deceased, standing near appellant, caught him as he fired these two shots and undertook to shove him out of the house. As she did so he turned the pistol on her and shot her in the abdo-

men, inflicting the wound that caused her death. Another girl, Carmen Mora, fled the house calling for help, and he fired two shots at this fleeing girl. This is the State's case, and amply supports the verdict rendered by the jury.

Appellant's contention is that he went to the Randado ranch about six days before the shooting, and that he was drunk while there. That he got the intoxicants from Juana Mora, the mother. That he sent two children of Damiana Villarreal to the house after the beer and mezcal. Neither one of these children were introduced as witnesses, and neither does the record disclose that any process had ever been issued for them. He says on the morning of the tragedy he decided to go after the mezcal himself, and went to the house for this purpose, and did purchase two glasses of mezcal from Mrs. Mora, and claims not to recollect very well what took place subsequently to taking these two drinks. That he wanted more mezcal and they would not let him have it, and he pulled his pistol and it was accidentally fired. The deceased caught hold of him and he fell, when in the scuffle the pistol was fired three more times unintentionally and accidentally. He offered no testimony except his own that he had secured any intoxicants from Mrs. Mora, and this the State's evidence would authorize a finding that it was not true. The court in his charge presented defendant's theory of the case and instructed them: "Among the defenses in this case the defendant raises the issue of an accidental killing, and on this issue you are instructed that if the defendant did not intend to shoot Santos Mora, or to kill her, and if he and she were struggling with the pistol, and if it was discharged while they were so struggling without an intent on the part of the defendant that it should be discharged, and the shot entered Santos Mora and caused her death, then the defendant is not guilty of the offense charged, and if you have a reasonable doubt as to this issue you must give the defendant the benefit of the doubt and acquit him." So if we consider the evidence, this case should be affirmed. There is nothing in the record suggesting that the shot fired was intended for another. The State's case is that appellant deliberately turned the pistol on the girl and shot her in the abdomen. His theory is that he fell and the pistol was fired unintentionally.

The motion for rehearing is overruled.

*Overruled.*